**STATE of Iowa, Appellee,**

v.

**Juan Jose ROJAS–CARDONA a/k/a Pepe Rojas–Cardona, Appellant.**

**No. 92–713.**

Supreme Court of Iowa.

July 21, 1993.

Brent Rosenberg of The Rosenberg Law Firm, Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., Martha E. Boesen, Asst. Atty. Gen., J. Patrick White, County Atty., and Kelly Raines, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, SCHULTZ, and LAVORATO, JJ.

LAVORATO, Justice.

This criminal appeal presents us with two issues concerning Iowa's theft by check statute. *See* Iowa Code §§ 714.1(6), 714.2(2) (1991). First, if a payee agrees to accept a postdated check, is the payee deceived because the payee was unaware the account was closed at the time the check was written? Second, where such a check is given for property or services, must the check be given immediately upon completion of the services or delivery of the property? A jury convicted the defendant of violating section 714.1(6). On appeal the defendant challenges the district court's ruling denying his motions for judgment of acquittal and for new trial in which he raised both issues. We affirm.

I. *Background Facts.*

Shaugun Pan is a native of the People's Republic of China. He came to this country to secure a Ph.D. He received a doctorate in electrical and computer engineering from the University of Iowa in 1990.

Juan Jose Rojas–Cardona (a/k/a Pepe Rojas–Cardona) is an Iowa City resident. He had an idea. His idea was to translate catalogues printed in English into Spanish

and then telemarket the Spanish versions to the Hispanic community.

To launch his idea, Pepe needed a business plan. Through it he hoped to attract financing and customers. Pepe knew Shaugun through a mutual acquaintance and thought he would be the ideal person to draft the plan.

Pepe and Shaugun met several times to discuss Pepe's idea. After several of these discussions, the pair entered into an oral agreement. Under this agreement Shaugun was to provide Pepe with services including marketing research and a business plan. In return Pepe agreed to pay Shaugun $25 per hour for his work, payable upon completion of the project.

With input from Pepe, Shaugun produced three or four drafts of a business plan. Pepe used each of these to entice investors and customers. The two met regularly to discuss how the project was progressing.

While the work was progressing, Pepe persuaded Shaugun to loan him $5000 for an unrelated business venture. In return, Pepe agreed to pay Shaugun $7000 and gave Shaugun a postdated check drawn on a local bank for that amount.

Later Shaugun finished the business plan. He hand delivered it and a computer disk to Pepe with a letter/invoice requesting $3000 for his work on the plan. Pepe later wrote Shaugun a second postdated check for the $3000. This check was drawn on a different local bank.

When Shaugun tried to cash each check, the drawee banks refused payment. As to the $3000 check—the only check at issue here—the bank told Shaugun that it had, after notice to Pepe, involuntarily closed Pepe's account some three months before.

Shaugun contacted Pepe and told him about the checks. Pepe told Shaugun that the money would be in the accounts when Shaugun presented the checks again. When Shaugun presented the $3000 check again, the bank told him the account was still closed. Shaugun again contacted Pepe, who assured him money would be available the next time he presented the

check. This cat-and-mouse arrangement went on for several months. Shaugun never received the $3000 but was fortunate enough to receive substantial payments from Pepe on the $7000 check.

Shaugun informed the police about the unpaid $3000 check. The police instructed Shaugun to deposit the check into his own account. The check was later returned unpaid.

## II. *Background Proceedings.*

The State charged Pepe with theft by check in a single trial information. *See* Iowa Code §§ 714.1(6), 714.2(2). Later the State amended the trial information, adding a second count charging theft by deception. *See* Iowa Code §§ 714.1(3), 714.2(2).

Before trial, Pepe filed a motion to dismiss which the district court overruled. Pepe also filed a motion to sever the two counts which the district court sustained. The State appealed to this court for discretionary review of this last ruling and for an immediate stay. In a single justice ruling this court denied both requests.

The State proceeded to trial on the theft by check count. The district court overruled Pepe's motion for judgment of acquittal and his posttrial motions.

The district court sentenced Pepe to an indeterminate term not to exceed five years, suspended the sentence, and placed him on probation. Following sentencing on the theft by check conviction, the district court on Pepe's motion dismissed the theft by deception count on double jeopardy grounds over the State's objection.

Pepe appealed his conviction and the State cross-appealed from the district court's double jeopardy ruling. Later the State dismissed its cross appeal, so we consider only those issues Pepe raises.

## III. *Sufficiency of the Evidence.*

Pepe raised the two issues in question by a motion for judgment of acquittal after the State had completed its case in chief. He also raised the issues in a posttrial motion for new trial. He argues the dis-

trict court erroneously overruled both motions because the evidence was not sufficient either to submit the case to the jury or to support its verdict.

 In our review of motions for judgment of acquittal and new trial based on sufficiency of the evidence, we view the evidence in the light most favorable to the State. We draw all fair and reasonable inferences from the evidence, taking all of the evidence into consideration. We uphold a district court's refusal to grant a motion for judgment of acquittal if there is substantial record evidence to support the charge. Likewise, we uphold a jury verdict against a posttrial motion for new trial based on sufficiency of the evidence if there is substantial record evidence to support the verdict. Evidence is substantial if it could convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt. *State v. Schrier*, 300 N.W.2d 305, 306 (Iowa 1981).

IV. *Theft by Check.*

 A. *Deception.* Theft by check is committed under Iowa Code section 714.-1(6) when a person

> [m]akes, utters, draws, delivers, or gives any check ... on any bank ... and obtains property or service in exchange therefor, if *the person knows that such check ... will not be paid when presented.*

(Emphasis added.) An implicit element of the offense is deception on the part of the maker at the time the check is delivered. *State v. Smith*, 300 N.W.2d 90, 92 (Iowa 1981). This court explained the element this way:

> Deception is established by the obtaining of something of value through the use of a check *which the perpetrator knows is worthless.* This guilty knowledge is the mens rea of the offense. Specific intent to defraud is not an essential element.

*Id.* at 92–93 (emphasis added) (citation omitted). Later we explained how to decide whether deception exists when a postdated check is given:

Our holdings establish that when there is an understanding between the parties that a check is not cashable [the check is not payable from funds on deposit] at the time it is received, *but will be made so at some time in the future*, the representations made are only promises, there is no deception and, thus, no criminal liability results under section 714.1(6). If, however, the surrounding circumstances at the time a check is given, including the statements made, are representations that sufficient funds exist at that time to cover the check, then criminal liability may result even though a check is postdated. *Our focus remains on the representations made at the time a check is delivered.*

*State v. McFadden*, 467 N.W.2d 578, 581 (Iowa 1991) (emphasis added) (citations omitted).

The State presented evidence which showed that before he tendered the check to Shaugun, Pepe received notice from his bank that his account was closed. There was also evidence that Pepe received the statutorily required ten day "make good" notice regarding the check. *See* Iowa Code § 714.1(6) (statute allows jury to infer maker knew check would not be paid on presentment if holder gives maker ten days notice that payment has been refused and thereafter maker does not pay check within such ten days). And, from the time of this statutory notice until trial, one year went by without any attempt on the part of Pepe to satisfy the check.

It is undisputed that Pepe told Shaugun—and that Shaugun understood—the $3000 check was not good on the date of tender. But the State also produced evidence from which a jury could conclude that Pepe also told Shaugun—and Shaugun understood—the check would be good no later than the postdate. The jury could conclude that this representation necessarily implied that Pepe had an open account with the drawee bank and that the funds would be in the account—implications that Pepe knew were false. *See* Iowa Code § 714.1(6) (refusal of drawee bank to pay check because maker has no account per-

mits jury to infer from such fact that maker knew check would not be paid on presentment). And Shaugun testified that had he known Pepe's account was closed, he would not have accepted the check.

Under the evidence presented we think a jury could find that at the time he tendered the check to Shaugun, Pepe knew his account was closed. He therefore knew the check was worthless and would never be paid by the bank. Pepe also knew that his representation that the check would be good when Shaugun presented it for payment was false. In short, there is substantial evidence from which a jury could find that Pepe deceived Shaugun at the time Pepe tendered the check to him. *Cf. State v. Johnson*, 196 N.W.2d 563, 567 (Iowa 1972) (act of drawing check on bank and delivering it to payee carried with it representation that drawer had funds or credit with bank to meet check; defendant convicted of false uttering after drawing check on bank with which he had no account); *State v. Mathias*, 216 N.W.2d 319, 321 (Iowa 1974) (check written on nonexisting account; intent to defraud could be inferred from evidence that defendant knew at time he gave check he would not have funds in bank to pay check when it was presented); *State v. Coburn*, 244 N.W.2d 560, 563 (Iowa 1976) (check written on account defendant knew had been closed and defendant received statutory ten day notice that check had not been honored or paid; held this evidence constituted prima facie evidence of intent to defraud).

B. *Contemporaneous exchange.* Iowa Code section 714.1(6) requires, among other things, that "property or service" be obtained "in exchange" for the tendered check. In short, the statute requires that the payee give up something of value in reliance on the check. Generally, payment of a preexisting debt with a bad check is not a violation of bad check statutes like ours. This is because nothing of value is given up in reliance on the check. *See* F.M. English, Annotation, *Construction and Effect of "Bad Check" Statute with Respect to Check in Payment of Pre–Existing Debt*, 59 A.L.R.2d 1159 (1958).

Pepe relies on this general rule. He argues that because he had received everything he was entitled to under the agreement before the $3000 check was tendered, the check induced Shaugun to part with nothing. For this reason, Pepe claims there was no evidence of an "exchange" of property or services for the check as our statute requires. He characterizes his dealings with Shaugun as nothing more than a credit transaction.

To support his position, Pepe relies heavily on a line of Georgia cases. In one, a defendant had issued a bad check in partial payment for two carpet jobs. The check was given more than two months after the work was completed. Georgia's bad check statute is somewhat like ours. The Georgia statute requires an "exchange for a present consideration"; ours simply requires property or service in exchange for the check. In reversing a bad check conviction, the Georgia supreme court significantly observed:

> We realize that in the fast pace of commerce, *services and payment for services cannot always be exchanged at exactly the same time.* However, the requisite of *"present consideration" may exist although goods or services are received before a check is delivered* in payment, *where the interval is slight and the exchange can be characterized as a single contemporaneous transaction.*

*Bowers v. State*, 248 Ga. 714, 715, 285 S.E.2d 702, 703 (1982). The court went on to hold as a matter of law that a check tendered more than two months after the work was completed was not an "exchange for a present consideration." *Id.*

The rationale for the contemporaneous transaction requirement was explained in *Griffith v. State*, 249 Ga. 19, 287 S.E.2d 187 (1982). The contemporaneous transaction requirement reflects the traditional notion in bad check cases that the payee must give up something of value in reliance on the check. "Present consideration" in the Georgia statute is a shorthand way of expressing this notion. *Id.* at 20, 287 S.E.2d at 189.

Later, applying the rationale sketched out above in *Bowers,* the Georgia court of appeals held that there was sufficient evidence to support a finding that the exchange of goods and services for the defendant's check was a single contemporaneous transaction. *See Singletary v. State,* 192 Ga.App. 653, 653–54, 385 S.E.2d 791, 792 (1989). In *Singletary,* the facts were more akin to the facts in this case. A contractor agreed to construct some improvements to the defendant's mobile home. The contractor sent two invoices following the completion of the work. Three days later, the defendant gave the contractor a bad check in payment of the invoices.

■ Here the jury could reasonably find from the evidence that Shaugun and Pepe originally agreed that prompt payment was due at the time Shaugun delivered the final product. No credit transaction was contemplated. The evidence shows that Shaugun did most of the work on the plan between March and May 1990. Shaugun continued to provide Pepe with revised versions of the plan until he delivered the final product with an invoice for the amount due. Although the exact date Pepe tendered the $3000 check is disputed, the jury could find that this date was within a short time of Shaugun's delivery of the final plan and invoice.

Given the parties' original agreement as to prompt payment and the short time span between delivery and payment, we think whether the exchange was part of a single contemporaneous transaction was a fact question. So even under the Georgia line of cases, there was sufficient evidence to support a finding that property or services were obtained in exchange for the $3000 check as part of a single contemporaneous transaction.

V. *Disposition.*

■ We hold that under Iowa's theft by check statute a payee on a postdated check is deceived if the payee is unaware the account on which the check is written is closed. We also hold that the check is given in exchange for property or services even though the check is not tendered im-

mediately upon delivery of the property or completion of the services. In this case there was substantial evidence to support findings on both issues adverse to the defendant. For these reasons the district court correctly denied the defendant's motions for judgment of acquittal and for new trial in which he raised both issues. We affirm.

**AFFIRMED.**