John B. PHILLIPS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9869.

Court of Appeals of Alaska.

July 17, 2009.

Beth G.L. Trimmer, Assistant Public Advocate, and Rachel Levitt, Public Advocate, Anchorage, for the Appellant.

Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Juneau, Attorney General, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

BOLGER, Judge.

John B. Phillips was convicted of five counts of second-degree forgery,[1] five counts of second- and third-degree theft,[2] one count of fraudulently using an access device,[3] and four counts of first-degree criminal impersonation.[4] In this appeal, Phillips argues that

---

1. Counts 1, 5, 8, 12, and 15 were charged under AS 11.46.505(a)(1).

2. Counts 2, 13, and 16 were charged under AS 11.46.130(a)(1). Counts 6 and 9 were charged under AS 11.46.140(a)(1). Count 11, also charging third-degree theft under AS 11.46.140(a)(1), was dismissed.

3. Count 3 was charged under AS 11.46.285(a)(1)-(3).

4. Counts 4, 7, 10, and 14 were charged under AS 11.46.565.

the trial court should have entered acquittals on his charges of criminal impersonation. We agree that there is insufficient evidence that he damaged the financial reputation of one of his victims, and that he is entitled to acquittal on the criminal impersonation counts related to that victim.

Phillips also argues that the trial court should not have admitted evidence of credit cards, checks, and other documents that belonged, or referred, to people other than the victims in this case. But we conclude that this evidence was relevant to show Phillips's motive and knowledge, since the crimes in this case were part of a larger identity-theft scheme.

We further conclude that the conditions on Phillips's probation were reasonably related to his rehabilitation, but that the judgment incorrectly suggested that Phillips was ineligible for discretionary parole.

### Background

On December 12, 2005, Palmer Police Officer James Gipson stopped Phillips's vehicle for traffic violations. Phillips produced his driver's license and gave the officer consent to search the vehicle's passenger area. During this search, Gipson noticed an open checkbook containing another identification card with Phillips's picture on it. Gipson also saw credit-card checks bearing the name "Andrew Gray," a checkbook apparently belonging to Dondi Sturm, and a credit card issued to Gwendolyn Brown.

Based on this information, Gipson later obtained a warrant to search three suitcases belonging to Phillips, and he found mail and checkbooks belonging to many different people, as well as computer equipment for printing color photographs. An inspection of the computer hard drives showed that Phillips was using the equipment to manufacture fake driver's licenses.

The police also searched Phillips's Anchorage storage unit and found more stolen mail, additional fake licenses and state identification cards, and a substantial volume of new merchandise, some of which was matched to purchases made with the checking accounts

belonging to Sturm and Gray. On February 2, 2006, in an interview with Fairbanks Police Detective Pearl Holston, Phillips confessed his participation in a large-scale identity-theft ring.

Phillips was charged with forgery, theft, and fraudulent use of an access device related to his use of credit-card checks stolen from Gray for purchases at the Wasilla Wal-Mart on December 8, 2005. Phillips was charged with forgery, theft, and criminal impersonation related to purchases at a Wasilla Carrs on December 9, 2005, using a check stolen from Sturm. Phillips was also charged with forgery, theft, and criminal impersonation for purchases he made at a Wasilla Fred Meyer on December 10, 2005, again using a check stolen from Sturm. Phillips was also charged with forgery, theft, and criminal impersonation for purchases he made at the Wasilla Lowe's on December 5, 2005, using a check stolen from Scott Roberts. Finally, Phillips was charged with forgery, theft, and criminal impersonation for additional purchases he made at the Wasilla Lowe's on December 6, 2005, again using a check stolen from Roberts.

At trial, the jury returned guilty verdicts on these fifteen counts, and found three aggravating factors. Superior Court Judge Eric B. Smith imposed a composite sentence of 10 years' imprisonment with 5 years suspended. Phillips now appeals.

### Sufficiency of the Evidence of Criminal Impersonation

▊ Phillips argues that the State presented insufficient evidence to support his convictions of criminal impersonation in the first degree. Counts 4 and 7 related to offenses against Sturm; Counts 10 and 14 related to offenses against Roberts. The precise issue is whether Phillips's misconduct "damage[d] the financial reputation" of these two victims.[5] Under the statute, "'[f]inancial reputation' means a person's (A) ability to obtain a loan from a financial institution, open an account with a financial institution, obtain property or services on credit, or obtain an access device; or (B) creditwor-

---

5. AS 11.46.565.

thiness in a credit report." [6]  Therefore, in order to prove first-degree criminal impersonation, the State must prove that the alleged victim has suffered damage to at least one of these alternatives that signify his "financial reputation."

When evaluating the sufficiency of the evidence, we consider only the evidence and reasonable inferences most favorable to the verdict.[7]  We uphold a guilty verdict when a reasonable juror could have concluded that the defendant was guilty beyond a reasonable doubt.[8]

At trial, Phillips argued that the State failed to prove damage to Sturm's financial reputation because Sturm's credit was already affected by bankruptcy and many delinquent payments.  But Sturm testified that he had, nonetheless, suffered several adverse effects from Phillips's misconduct.  For instance, Sturm testified that the vendors Phillips paid with Sturm's checks had sent the unpaid checks to collection agencies, and that these agencies had then contacted Sturm thirty to forty times.  Furthermore, Sturm explained that he bounced six checks because of the money withdrawn from his bank accounts.  Sturm also testified that Phillips's actions ruined his credit.

On cross examination, Sturm admitted that the marks on his credit report that remained delinquent were related to financial troubles that arose before Phillips had stolen his checks.  But on redirect examination, Sturm maintained that he had additional bad marks on his current credit report based on the checks that Phillips had stolen and forged.

When we review the sufficiency of the evidence for a criminal conviction, we do not weigh the evidence or try to evaluate witness credibility.[9]  Based on the evidence presented, a reasonable juror could have inferred that Phillips's actions harmed Sturm's "creditworthiness in a credit report," a type of damage to his financial reputation that is recognized in the statute.  The evidence was therefore sufficient to support the counts involving Sturm.

■  Phillips also argues that there was insufficient evidence to support his criminal impersonation convictions related to Roberts.  At trial, Roberts testified that checks forged by Phillips bounced when Roberts closed his checking account, and that these checks had since been turned over to collection agencies.  But Roberts testified that he did not know if Phillips's actions had any effect on his credit report, that he continued to bank without problems, that he had not attempted to take out any loans, and that he did not know whether his credit was adversely affected.

The State did not offer any other evidence that Roberts's creditworthiness had been affected or that his ability to obtain a loan, open an account, obtain credit, or obtain an access device had been impaired.  The State therefore failed to offer sufficient evidence from which a reasonable juror could conclude that Phillips had impaired Roberts's financial reputation in any of the ways that financial reputation is defined.  We must therefore remand this case for entry of judgments of acquittal on counts 10 and 14.

### Evidence of Crimes Against Other Victims

■  Before his trial, Phillips filed a motion in limine challenging the admission of any uncharged criminal activity.  When the court heard arguments on this motion, the prosecutor argued that the documents relating to other victims were relevant to show Phillips's preparation, plan, identity, knowledge, and motive.  In response to questioning from Judge Smith, Phillips's attorney conceded that the evidence was relevant to those issues, but clarified that he was arguing that the evidence was more prejudicial than probative.  Judge Smith denied the motion in limine, but told Phillips that he could object to individual exhibits as they were offered into evidence.

6.  AS 11.46.990(10).

7.  See Dorman v. State, 622 P.2d 448, 453 (Alaska 1981).

8.  See Sheldon v. State, 796 P.2d 831, 839 (Alaska App.1990).

9.  See, e.g., Ratliff v. State, 798 P.2d 1288, 1291 (Alaska App.1990).

Accordingly, Phillips objected when the prosecution offered testimony that the police found a credit card belonging to Gwendolyn Brown in the car when he was arrested. In response, the prosecutor argued that the card was relevant to show Phillips's guilty knowledge, because Phillips had insisted that Brown's credit card and an assortment of checks were left in his car when he bought it. The judge ruled that the credit card was relevant evidence of Phillips's "overall plan." Phillips also objected to several exhibits including checks, checkbooks, or other forms of paperwork belonging to individuals in addition to the victims in this case.[10]

Alaska Evidence Rule 404(b) restricts the admissibility of evidence of other crimes.[11] But evidence of an ongoing fraudulent scheme may be admissible to show the defendant's motive, intent, knowledge or plan as those terms are used in Evidence Rule 404(b).[12] In the present case the evidence that Phillips had credit cards, checks, and other documents referring to other individuals tended to show (1) his overall plan to steal mail and use it to create false identifica-

tion documents, (2) his motive for possession of the documents referring to Day, Sturm, and Roberts, (3) his knowledge that those documents were stolen, and (4) his intent to use the documents he had stolen and created to make unauthorized purchases.

■ Phillips argues that this evidence should have been excluded under Alaska Evidence Rule 403, because it was more prejudicial than probative.[13] However, Judge Smith could legitimately conclude that the probative value of this evidence to explain Phillips's identity-theft scheme outweighed the possibility that the jury would improperly conclude that Phillips had a propensity to commit this type of crime.[14]

Furthermore, the record contains a substantial amount of additional evidence that is not contested in this appeal—evidence suggesting that Phillips was involved in a scheme to profit from the theft of the identities of dozens of other people. Consequently, there is not a substantial likelihood that the jury's verdict was appreciably affected by the evidence that Phillips now disputes.[15]

10. The exhibits were (by exhibit number): (55) a photograph of a check with the name of Shirley Winther, (56) a closeup of the Winther check, (61) a scrap of paper with the name "Andrea," a name shared by Phillips's girlfriend, (64) stolen checkbooks belonging to Conrad Blatler and a check belonging to another individual with a Fairbanks address, (65–66) duplicate copies of Exhibit 64, (67) checkbooks and paperwork belonging to Conrad Blatler, John and Heather Coghill, Sean Roos, Jennifer Uhaus, and Evan King, (68–71) closeups of the checkbooks in 67, and (76) a United States Treasury check in the name of Amanda Treavor.

11. Alaska Evidence Rule 404(b)(1) provides:

Evidence of other crimes, wrongs, or acts is not admissible if the sole purpose for offering the evidence is to prove the character of a person in order to show that the person acted in conformity therewith. It is, however, admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

12. See, e.g., Fields v. State, 629 P.2d 46, 50 (Alaska 1981) ("Evidence of other offenses or misconduct is often relevant to show that the charged offense was part of an overall scheme or plan to defraud."); Miller v. State, 866 P.2d 130, 133–34 (Alaska App.1994) (concluding that the defendant's drug-dealing enterprise was relevant to show his motive for a home-invasion robbery,

since the robbery could have provided funds for the drug operation); D'Antorio v. State, 837 P.2d 727, 735 (Alaska App.1992) (allowing credit cards and records belonging to other victims because they were relevant to show the defendant's fraudulent credit card scheme); Montes v. State, 669 P.2d 961, 965 n. 1 (Alaska App.1983) (deciding that evidence that the defendant had fraudulently stolen and sold a number of airplanes and parts while misleading his business partner was admissible as proof of a common scheme).

13. Alaska Evidence Rule 403 provides that "relevant ... evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice."

14. Cf. Miller, 866 P.2d at 134 ("Under the circumstances of this case, ... proof of motive and common scheme or plan were crucial and legitimate components of the prosecution's case.... Because the disputed evidence had direct and obvious bearing on an actively disputed issue and was actually necessary to the state's case, we conclude that the trial court did not abuse its discretion in finding the evidence more probative than prejudicial under A.R.E. 403 and in allowing its admission.")

15. See Wyatt v. State, 981 P.2d 109, 115 (Alaska 1999) (noting that an evidentiary error is harmless if it did not "appreciably affect the jury's

### Probation Conditions

A condition of probation must be "reasonably related to the rehabilitation of the offender and the protection of the public, and must not be unduly restrictive of [the offender's] liberty."[16] Phillips appeals two probation conditions, Special Condition 4, which requires him to submit to drug and alcohol testing, and General Condition 13, which requires him to abide by special instructions from his probation officer.

We have allowed conditions of probation that authorize warrantless searches for drugs and alcohol when there is a case-specific basis for the condition.[17] For example, a sentencing judge may impose such a condition when substance abuse in the defendant's background suggests that searches for drugs and alcohol may further the defendant's rehabilitation.[18]

In this case, the record includes substantial evidence of Phillips's struggles with substance abuse. Phillips's driver's license was revoked twice in 2000 for being a minor possessing alcohol, Phillips's license was revoked again in 2004 for providing a breath test result in excess of 0.08 percent, and Phillips was also convicted of refusal to submit to a chemical test in 2005. In addition, Phillips admitted that he used nitrous oxide to get high, and nitrous oxide cartridges were found in Phillips's vehicle after he was arrested in this case.

Furthermore, a man named Marvell Wells told Officer Kelly Turney that during the period of these offenses, Phillips, Wells, and two other people stayed at a hotel for about a week, where they partied and consumed a lot of drugs. This evidence of substance abuse was sufficient to establish that searches for drugs and alcohol would be reasonably related to Phillips's successful rehabilitation.

Phillips also appeals General Condition 13, which provides that he shall "[a]bide by any special instructions given by the court or any of its duly authorized officers, including probation officers of the Department of Corrections." Phillips argues that this condition is overbroad. But this argument ignores the implicit limitations on a probation officer's authority in other provisions of law. Indeed, we have noted that defendants have "the right to seek court review of any special instruction from a probation officer."[19] We therefore conclude that this condition is appropriate for effective probation supervision.

### Parole Eligibility

Phillips also appeals the superior court's denial of his motion to correct a clerical error in the judgment. The judgment states that: "The sentence is ... all or partially presumptive. The defendant is ineligible for parole, except as provided in AS 33.16.090(b) and (c)." This language is based on presumptive sentencing statutes that had been modified prior to Phillips's offense, and it suggests that Phillips is not eligible for discretionary parole. However, under current law, as explained in Judge Smith's post-judgment order, Phillips is eligible for discretionary parole. On remand, the court should correct the judgment to read that the defendant is eligible for parole as provided by statute.

### Conclusion

We REVERSE the convictions entered on Counts 10 and 14, and REMAND for entry of judgments of acquittal on those counts. We AFFIRM the convictions entered on all the remaining counts. But we REMAND for resentencing on the remaining counts and for correction of the judgment concerning the defendant's parole eligibility.

---

verdict") (quoting *Love v. State,* 457 P.2d 622, 631–32 (Alaska 1969)).

**16.** *Roman v. State,* 570 P.2d 1235, 1240 (Alaska 1977).

**17.** *See, e.g., Lambert v. State,* 172 P.3d 838, 841–42 (Alaska App.2007).

**18.** *Id.* at 840–41.

**19.** *Dayton v. State,* 120 P.3d 1073, 1084 (Alaska App.2005).