**Dorothy S. DELAY–WILSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–10721.**

Court of Appeals of Alaska.

Oct. 28, 2011.

position because there was no patent internal inconsistency in the bid and no other marker of unreliability.

Rex Lamont Butler, Rex Lamont Butler & Associates, Inc., Anchorage, for the Appellant.

Eric A. Ringsmuth, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and John J. Burns, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

### *OPINION*

COATS, Chief Judge.

Dorothy Delay–Wilson was convicted of three counts of issuing a bad check [1] and one count of second-degree theft.[2] The bad check convictions were based on three separate checks that she deposited to her Key Bank account during September 2008. Two of the checks were in the amounts of $6000 and $3500 and were drawn from her Wells Fargo account, which did not have enough funds to cover the checks. The third check was a counterfeit check drawn on a third person's account in the amount of $3825. Delay–Wilson would cash the checks and then deposit the cash into her Key Bank account. In this manner, Delay–Wilson avoided having the bank place a hold on the checks. She would later withdraw the cash

from the account. The State's theory was that Delay–Wilson used her knowledge of banking practices to siphon money from her Key Bank account while it was artificially inflated by the bad checks.

Delay–Wilson argues that she should have been acquitted on one of the convictions for issuing a bad check. This was the counterfeit check for $3825 from Ingram Book Company which Delay–Wilson cashed on September 17, 2008. She then deposited the cash from this check into her bank account. The check was made out to Amanda VanVliet, Delay–Wilson's daughter, and was endorsed by VanVliet payable to Delay–Wilson, who in turn endorsed the check.

Under AS 11.46.280(a), "a person commits the crime of issuing a bad check if the person issues a check knowing that it will not be honored by the drawee." Further, "a person 'issues' a check *when as a drawer* the person delivers it or causes it to be delivered to a person who thereby acquires a right against the drawer with respect to the check . . . ." [3] The statute does not define the term "drawer." But the Alaska statutes adopting the Uniform Commercial Code define "drawer" to mean "person who signs or is identified in a draft as a person ordering payment . . . ." [4] In other words, the offense of issuing a bad check under AS 11.46.280 requires proof that the defendant signed or otherwise authorized the check in question.

Here, the Ingram Books check purported to authorize payment from a Citibank account belonging to Ingram Books. Delay–Wilson did not "issue" the check in question—she did not sign the check in the sense of authorizing payment from an account that she owned or controlled. She merely signed the check to endorse it and thus negotiate it.[5]

The State concedes that the mere act of endorsing the check is not sufficient to establish liability under AS 11.46.280 and that Delay–Wilson did not issue the Ingram Books check. The State's concession of er-

---

1. AS 11.46.280(d)(2).

2. AS 11.46.130(a)(1).

3. AS 11.46.280(c)(3) (emphasis added).

4. AS 45.03.103(a)(3).

5. *See* AS 45.03.201, .204.

ror is well founded.[6]   Therefore, Delay–Wilson's conviction on this count must be vacated and a judgment of acquittal must be entered.

■   Delay–Wilson argues that her other two convictions for issuing a bad check should also be overturned.   Delay–Wilson cashed a $6000 check on September 13, 2008.   She deposited a $3500 check in one of her accounts on September 25, 2008.   In these two instances, it is uncontested that Delay–Wilson issued these checks as the drawer of the checks.   She wrote the checks on an account owned by her, and she signed the checks and delivered them to the bank.   Delay–Wilson concedes that she issued these checks and that they were not honored. But she argues that there was insufficient evidence to show that she did so knowingly.

■   When evaluating a verdict to determine if it is supported by sufficient evidence, we evaluate the evidence and the inferences from the evidence in the light most favorable to upholding the jury's verdict.[7]   We uphold a guilty verdict when we conclude that a reasonable jury could have concluded that the defendant was guilty beyond a reasonable doubt.[8]   From the evidence presented at trial, the jury could have found that Delay–Wilson knew that there was nowhere near a sufficient amount of money in the account on which the checks were drawn to pay the checks when she deposited them.   Delay–Wilson also withdrew substantial amounts of cash from her account before the bank realized that the checks were not good.   In addition, the State presented evidence that Delay–Wilson deposited two counterfeit checks almost a year later in June and July of 2009.   Delay–Wilson was an experienced business woman who owned multiple businesses.   This evidence supported a reasonable conclusion by a jury that Delay–Wilson had not merely made a mistake when she issued the two checks in September of 2008, but knew that there were insufficient funds in her accounts to pay the checks.   We conclude that, evaluating the evidence in the light most favorable to the jury's verdict, the jury could have found Delay–Wilson guilty beyond a reasonable doubt.

■   Delay–Wilson argues that her conviction for theft in the second degree was not supported by sufficient evidence.   A person commits second-degree theft "if with intent to deprive another of property or to appropriate property of another to oneself or a third person, the person obtains the property of another,"[9] and that property is worth "$500 or more but less than $25,000."[10]

Delay–Wilson asserts that, because her actions were easily traceable, no reasonable jury could conclude that she would try to steal money from Key Bank by depositing bad checks and then withdrawing the cash before the checks were discovered to be bad.   But this scenario reviews the evidence in the light most favorable to Delay–Wilson.   As we have previously stated, we review the evidence in the light most favorable to upholding the jury's verdict. And, as in our analysis of her bad check convictions, we conclude that a reasonable jury could find that Delay–Wilson acted with the intent to deprive Key Bank of property worth more than $500.

■   Delay–Wilson argues that Judge Spaan erred in instructing the jury on the mental state which the jury was required to find in order to convict her of theft.   She contends that he should have instructed the jury on the charge of theft by deception and should have instructed the jury that, to convict her, the jury had to find that she did not believe there were sufficient funds in her accounts to pay the checks which she issued.[11]

**6.**   *See Marks v. State,* 496 P.2d 66, 67–68 (Alaska 1972).

**7.**   *Id.*

**8.**   *Phillips v. State,* 211 P.3d 1148, 1151 (Alaska App.2009).

**9.**   AS 11.46.130.

**10.**   AS 11.46.100.

**11.**   *See generally* AS 11.46.180 (theft by deception statute); AS 11.81.900(b)(18)(A) (defining "deception" to mean "to knowingly create or confirm another's false impression that the defendant does not believe to be true, including false impressions as to law or value and false impressions as to intention or other state of mind").

Delay–Wilson failed to preserve this argument by raising an objection at trial. She must therefore establish that the alleged error would be obvious to a competent judge or attorney even without an objection.[12]

The State did not charge Delay–Wilson with theft by deception. Judge Spaan instructed the jury that, to convict Delay–Wilson of theft in the second degree, the jury had to find that she "intended to deprive another of property or to appropriate the property of another to herself," that she "obtained the property of another," and that "the value of the property was $500 or more." Under the court's instructions, the jury had to find that Delay–Wilson had the "conscious objective" to deprive the bank of the money.[13] Because the jury had to find that Delay–Wilson intended to deprive the bank of property, it had to find that she knew that there were insufficient funds in her accounts when she issued the checks. We do not find plain error.

*Conclusion*

On REMAND, we direct the superior court to VACATE Delay–Wilson's conviction on Count II, the count that charges her with issuing the bad check on September 17, 2008. The court shall enter a judgment of acquittal on this charge. In all other respects, the judgment of the superior court is AFFIRMED.

---

**12.** *Adams v. State,* 927 P.2d 751, 756 (Alaska App.1996).

**13.** *See generally* AS 11.81.900(a)(1) (stating that "a person acts 'intentionally' with respect to a result ... when the person's conscious objective is to cause that result").