**Jose K. DIOREC III, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–11018.

Court of Appeals of Alaska.

Feb. 22, 2013.

David D. Reineke, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Stephen R. West, District Attorney, Ketchikan, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: MANNHEIMER, Chief Judge, and BOLGER and ALLARD, Judges.

### OPINION

BOLGER, Judge.

Jose K. Diorec III was convicted of unlawful exploitation of a minor for surreptitiously filming his stepdaughter in her bedroom. He challenges several conditions on his pro-

bation, including requirements that he submit to periodic polygraph examinations, that he have no contact with the victim or her family, that he complete sex offender treatment and other unspecified programs, that he advise other household members of his criminal history, that he avoid involvement with organizations for children, that he have no "sexually explicit material," and that he not access the Internet without his probation officer's permission. We generally conclude that these conditions are sufficiently related to Diorec's rehabilitation and the protection of the public. But we conclude that the definition of "sexually explicit material" must be modified to provide constitutionally adequate notice of what is prohibited.

### Background

Diorec bought a spy camera online and installed it in a smoke detector in the bedroom of his fourteen-year-old stepdaughter, J.F. He placed a video transmitter in the ceiling above the camera, and hid a receiver in the entertainment center in the living room. Diorec's wife and her two daughters discovered the camera when they plugged the receiver into the TV after watching a video. They also discovered an unlabeled VHS tape under the entertainment center that included a recording of J.F. in her room. When Diorec's wife confronted him, Diorec smashed the tape cassette, and threw the film from inside it into the woods.

The police executed a search warrant on the residence and seized VHS tapes from different parts of the house. Seven of the tapes contained footage of J.F. in underwear, naked, or masturbating.

During the police investigation, J.F. reported that Diorec had come into her room unannounced while she was masturbating approximately a year before. Diorec told J.F. that masturbation was normal, and the next day he gave her some lubricant. Shortly after that, J.F. found a sex toy that Diorec had left on her bed.

Diorec's wife told the police that Diorec had opened a Twitter account about six months before, using the profile of a sixteen-year-old boy. At sentencing, she told the court Diorec had used that account to contact J.F. and her friends.

The State charged Diorec with unlawful sexual exploitation of a minor, possession of child pornography, and tampering with physical evidence. Prior to trial, Diorec entered into a plea agreement and pleaded no contest to a single count of unlawful sexual exploitation of a minor. Diorec also admitted two aggravating factors: that his crime was committed against another household member,[1] and that he had engaged in other similar conduct against the same victim.[2]

Diorec objected to several conditions of probation that were requested in the presentence report. The court modified some of these conditions and imposed others as proposed. These conditions are the main subject of this appeal.

### Discussion

A probation condition must be "reasonably related to the rehabilitation of the offender and the protection of the public and must not be unduly restrictive of liberty."[3] Conditions that restrict constitutional rights are subject to special scrutiny to determine whether the restriction serves the goals of rehabilitation of the offender and protection of the public.[4]

#### The polygraph examination requirement

General Condition No. 12 requires Diorec to "submit to periodic polygraph examinations as directed by a probation officer of the Department of Corrections." Diorec argues that this requirement is not reasonably related to his rehabilitation or to the protection of the public. He argues that polygraph results are inadmissible in evidence, and that this requirement does not reasonably relate to any purpose of probation.

1. AS 12.55.155(c)(18)(A).

2. AS 12.55.155(c)(18)(B).

3. *Roman v. State*, 570 P.2d 1235, 1240 (Alaska 1977).

4. *Thomas v. State*, 710 P.2d 1017, 1019 (Alaska App.1985).

Alaska Statute 12.55.100(e)(1)(A) requires a defendant convicted of a sex offense "as a condition of probation . . . to submit to regular periodic polygraph examinations." The legislature explained the purpose of this requirement in a letter of intent that accompanied this legislation:

> For most offenders the hope for deterrence in Senate Bill 218 is provided by the increased probation periods and the use of the polygraph while on probation or parole. The polygraph will help to provide an early warning system during supervision that will put the probation or parole officer on notice that corrective action is necessary due to signs of deception or offending behavior. The use of the polygraph should prevent at least some future victimization from occurring.[5]

The legislature enacted this requirement based on committee testimony recommending periodic polygraph examinations as part of a comprehensive "containment approach" to the supervision of convicted sex offenders.[6]

Based on this legislative history, we conclude that the polygraph testing specified in the statute was intended to promote the rehabilitation of sex offenders and to protect the public from further sexual offenses. We thus assume that when Diorec submits to polygraph examinations pursuant to his probation condition, the examinations will be limited to those purposes.

Diorec also argues that the results of his polygraph examinations will not be admissible against him in probation revocation proceedings or other court proceedings. Under current Alaska law, the results of polygraph examinations are normally not admissible in court proceedings, even when the parties are willing to stipulate to the admission of the results.[7]

We note that courts from other states are currently split on the issue of whether a probationer's polygraph results are admissible in a probation revocation proceeding.[8] But Diorec has not yet been required to take a polygraph examination, and the State has never asked that the polygraph results be admitted into evidence. Consequently, this issue is not squarely in front of us in the present case, and we express no opinion on the proper resolution of this issue.

■ Diorec also contends that the requirement of polygraph examinations violates his privilege against self-incrimination—because he has been ordered to submit to these examinations, and because it is foreseeable that, during the examinations, he will be asked to provide information that might tend to incriminate him, either with respect to new offenses or with respect to other violations of his probation.[9] But the State concedes that it would be improper to interpret Diorec's condition of probation as requiring him to incriminate himself.

The State asserts that when probationers in Diorec's situation are summoned to submit to polygraph examinations, the Department of Corrections expressly advises the probationers that (1) they may assert their privilege against self-incrimination and refuse to answer any question if the requested information would tend to incriminate them, and (2) their probation will not be revoked for

---

5. 2006 Senate Journal 2211–12 (Feb. 16, 2006).

6. See the Minutes of the joint meeting of the Senate State Affairs Committee and the Senate Judiciary Committee held on March 16, 2005.

7. *Pulakis v. State*, 476 P.2d 474, 479 (Alaska 1970); *Haakanson v. State*, 760 P.2d 1030, 1034–35 (Alaska App.1988).

8. *Compare Hoeppner v. State*, 918 N.E.2d 695, 700 (Ind.App.2009), *and State v. Lumley*, 267 Kan. 4, 977 P.2d 914, 919–21 (1999) (both holding that the results of a polygraph examination are admissible in a probation revocation proceeding because a probation revocation hearing is not an adversarial criminal proceeding, but rather a civil matter with more flexible procedures), *and State v. Hammond*, 218 Or.App. 574, 180 P.3d 137, 141–42 (2008) (holding that polygraph results are admissible in probation revocation proceedings because those proceedings are not governed by the rules of evidence), *with Leonard v. State*, 315 S.W.3d 578, 580–81 (Tex. App.2010), *and Turner v. Commonwealth*, 278 Va. 739, 685 S.E.2d 665, 667–68 (2009), *and Lane v. State*, 762 So.2d 560, 561 (Fla.App.2000) (all holding that polygraph results are not admissible in any judicial proceeding, including a probation revocation hearing, because this evidence is not reliable).

9. *See James v. State*, 75 P.3d 1065, 1072 (Alaska App.2003).

valid assertions of the privilege against self-incrimination.

Given the State's representations to this Court, it appears that Diorec's court-ordered polygraph examinations do not present a realistic hazard of self-incrimination.[10] If, in the future, a dispute arises as to whether Diorec has validly invoked his privilege against self-incrimination during a polygraph examination, the superior court can resolve the dispute at that time.

*The restriction on contact with the victim or her family*

Special Condition No. 1 states that Diorec "shall have no contact, direct or indirect, with the victim J.F. and her immediate family, except as may be allowed by the court in [Diorec's divorce proceeding]." Diorec argues that this restriction unconstitutionally restricts his access to his other daughter, N.T., who was seven years old at the time of sentencing.

At sentencing, Diorec's ex-wife told the court that the divorce court had ordered that N.T.'s counselor had to approve any contact between Diorec and N.T. Diorec was allowed to write letters to N.T., and the counselor was holding them until N.T. was ready for them. And N.T. was writing in a journal that would be given to Diorec at some point in the future.

■ Conditions of probation restricting family associations must be subjected to special scrutiny because they implicate important constitutional rights.[11] In this case, however, Diorec had exploited a child from his nuclear family. Therefore it was reasonable for the sentencing court to act to protect the other members of his family, including his biological daughter, N.T.[12]

Moreover, this restriction is narrowly tailored to avoid unnecessary interference with Diorec's family relationships. Apparently, the divorce court had already issued a court order concerning N.T.'s custody and Diorec's contact with her. By deferring to the divorce court, Judge Carey avoided issuing a potentially conflicting order. In essence, Judge Carey simply ordered Diorec not to violate the orders of the divorce court. This condition adopts the least restriction on Diorec's family relationships by encompassing only a restriction that he was independently required to follow.

*The requirement that Diorec must complete "other Department-approved programs"*

Special Condition No. 6 requires Diorec to complete other programs at the direction of his probation officer:

The defendant shall, if decided to be appropriate by his probation officer and sex offender treatment provider, enter and successfully complete any other Department-approved programs, including but not limited to mental health counseling, cognitive behavioral therapy and domestic violence programming.

Diorec argues that the broad designation of "any other Department-approved programs" makes this condition overbroad because it delegates too much discretion to Diorec's probation officer.

■ However, we conclude that there are two restrictions on the probation officer's discretion that are relevant to our construction of this condition. First, the probation officer's authority for this type of condition is specifically defined and limited by statute. Alaska Statute 12.55.100(a)(5) authorizes conditions of probation that require the defendant,

to participate in or comply with the treatment plan of an inpatient or outpatient rehabilitation program specified by either the court or the defendant's probation officer that is related to the defendant's offense or to the defendant's rehabilitation.

---

10. *See Gyles v. State*, 901 P.2d 1143, 1148–49 (Alaska App.1995).

11. *Hinson v. State*, 199 P.3d 1166, 1174 (Alaska App.2008).

12. *See Nitz v. State*, 745 P.2d 1379, 1381–82 (Alaska App.1987) (upholding condition of probation restricting defendant who abused his daughter and other children from contact with his daughter); *Sylvester v. State*, Mem. Op. & J. No. 4460, 2001 WL 1173967, at *2 (Alaska App. Oct. 3, 2001) (upholding condition restricting defendant's contact with three daughters unless defendant was in presence of another adult who knew the circumstances of his crime).

Based on this statute, we assume that Diorec's probation officer may not require Diorec to participate in a treatment program unless the program is related to his offense or to his rehabilitation.

Second, the probation officer's authority is limited by the language of the condition itself. The condition lists examples of the types of Department-approved programs that Diorec may be required to participate in: mental health counseling, cognitive behavioral therapy, and domestic violence programming. This list suggests that the programs Diorec will be required to participate in will be similar to these examples.[13]

Moreover, the presentence investigation suggested that additional programs may be important for Diorec's rehabilitation. In particular, the presentence report details prior incidents where Diorec engaged in misbehavior involving stalking and domestic violence against a former girlfriend. Diorec had also been terminated from a position at Ketchikan Youth Facility for making sexual advances towards teenage female inmates. And Diorec's misconduct with J.F. could be interpreted to involve a long period of grooming for possible sexual abuse. We conclude that, when properly construed, this probation condition has a sufficient relationship to Diorec's crime and to his rehabilitation.

*The requirement that Diorec must advise other household members of his criminal history*

Special Condition No. 9 requires Diorec to "advise all members of the household in which he is residing of his criminal history, even when his residence is temporary." This condition also allows Diorec's probation officer to discuss the circumstances of Diorec's criminal history with other members of his household.

Diorec argues that this condition violates his constitutional rights to travel and association. He argues that less restrictive options should have been considered, such as prohibiting him from residing in a household with minor females.

We conclude that part of Diorec's argument is based on a misreading of this condition. This condition does not limit Diorec's choice of residence or require him to reveal his criminal history to his landlord. This condition only applies to Diorec if he chooses to reside with other people. In that case, Diorec will be required to advise the other members of his household of his criminal history.

This limited requirement is directly related to the protection of the public. Diorec's crime was committed against another household member. It is reasonable that future household members should be warned about his crime. This will enable household members to take appropriate precautions such as limiting visits from teenage girls. We conclude that this condition was well within the sentencing judge's discretion.

*The restriction on involvement with organizations for children*

Special Condition No. 11 requires Diorec to avoid involvement with certain organizations for children:

The defendant shall not be involved in any organizations which would place the defendant in direct contact with persons under sixteen years of age, i.e., Boy Scouts, Girl Scouts, 4–H, Big Brother or Big Sister program, Sunday School teaching, etc.

Diorec argues that this condition is vague and that it unnecessarily prohibits his involvement with organizations for male children (even though his victim was female). (There is a separate condition that restricts Diorec's contact with girls under the age of sixteen).

We construe this condition using the same approach we applied to the condition involving other treatment programs. The organizations that are listed as examples are all organizations whose primary aim is to provide activities for children. The restriction thus applies only to similar organizations: It prevents Diorec from coaching a middle school track team, but it does not prevent him from working in a supermarket. So construed, this condition does not improperly infringe any of Diorec's activities.

13. *See Kenai v. Friends of Recreation Center, Inc.,* 129 P.3d 452, 459 (Alaska 2006).

Diorec's main argument is that this condition impermissibly restrains his contact with boys, even though his offense was committed against a girl. But his argument does not provide any solid basis to limit the scope of this condition. The statute that authorizes this condition does not distinguish the gender of the victim—the statute simply allows the sentencing court to require a defendant convicted of a sexual offense against a minor to refrain from "communicating with children under 16 years of age."[14] And we have previously decided cases where sex offenders have committed offenses against both boys and girls.[15] Diorec has not pointed to any assessment in the record establishing that this condition is not necessary to protect minors of both genders.

Moreover, the record suggests another reason that Diorec should be restricted from organizations for boys. Diorec opened a Twitter account and pretended to be a teenage boy to establish a virtual relationship with J.F. and her friends. This suggests that even if Diorec is primarily interested in teenage girls, he could use his relationship with teenage boys to gain access to teenage girls. We conclude that there is a sufficient relationship between this condition and the goal of protection of the public.

*The restriction on sexually explicit material*

Special Condition No. 13 prohibits Diorec from possessing any "sexually explicit material," which is defined to include "child erotica, sexually graphic anime, adult and/or child pornography, chat logs included." Special Condition No. 14 forbids Diorec from entering any establishment "whose primary business is the sale of sexually explicit material" and "any establishment where nude dancing or posing is part of the entertainment." Special Condition No. 15 requires him to submit to warrantless searches of his residence, any vehicle under his control, and any device under his control with Internet connectivity

for the presence of "sexually explicit material."

At sentencing, Diorec objected to these conditions because they restricted his access to adult pornography and popular media containing sexually explicit material. Diorec argued the restrictions should be limited to prohibit sexually explicit material involving young girls. In response, the State argued that sex offenders use a variety of materials for stimulation, which can then lead to criminal misconduct.

■ Judge Carey concluded that these restrictions on possession of sexually explicit material were directly related to Diorec's crime and to his rehabilitation:

> I find the fact that Mr. Diorec was essentially involved in the production of pornography, or attempted pornography, and the fact that he had pornography on his computer was referenced by [the prosecutor]. I find that ... convinces me that the overall prohibition of pornography contained in number 13 and 14 ... is appropriate under the circumstances.... [A]nd I don't find that the possession of pornography is going to assist his rehabilitation in any way.

We agree with Judge Carey's conclusion that a restriction on sexually explicit material is generally related to Diorec's offense and to the sentencing goals of rehabilitation and protection of the public.

On appeal, Diorec repeats his argument that these conditions are overbroad because they prohibit him from possessing adult pornography, even though the victim of his crime was a child. But once again, we are hampered by the absence of any expert testimony or scientific studies on this topic. Diorec cites no cases suggesting that a condition banning adult pornography is unnecessary for an offender convicted of a crime against a child. And several courts have

**14.** AS 12.55.100(e)(2).

**15.** *Ferrick v. State,* 217 P.3d 418, 420 (Alaska App.2009) (reviewing a case where the defendant was convicted of possession of child pornography involving pictures of both boys and girls); *Williams v. State,* 928 P.2d 600, 605 (Alaska App.1996) (reviewing convictions for sexual

abuse of nine- and ten-year-old girls and defendant admitted previously molesting a three-year-old boy); *James v. State,* 754 P.2d 1336, 1338 (Alaska App.1988) (reviewing convictions involving the attempted sexual assaults of a ten-year-old boy and a nine-year-old girl).

rejected this argument.[16] We conclude that Diorec has not established that Judge Carey committed an abuse of discretion when he concluded that the restriction on adult material is necessary to protect the public and to promote Diorec's rehabilitation.

Diorec also argues that the term "sexually explicit material" is unconstitutionally vague. As noted above, probation conditions may restrict constitutional rights, but such restrictions are subject to special scrutiny to determine whether they are necessary to promote the goals of rehabilitation and protection of the public.[17]

Diorec relies on a case where the Indiana Court of Appeals held that a probation condition prohibiting possession of "any pornographic or sexually explicit materials" was unconstitutionally vague.[18] The State also cites cases where the Washington Supreme Court and the Ninth Circuit Court of Appeals have held that probation conditions prohibiting possession of pornography were invalid because the word "pornography" is unconstitutionally vague.[19] But the State notes that the same courts have upheld the use of the terms "sexually oriented material" and "sexually explicit material," particularly when those terms are tied to a specific statutory definition.[20]

■ In the present case, Judge Carey defined the term "sexually explicit material" to include "pornography," a term that has been held to be unconstitutionally vague in cases cited by both Diorec and the State. This portion of Diorec's condition must be revised. On remand, the superior court shall revise this condition so that it provides constitutionally adequate notice of the materials that Diorec is restricted from possessing.

We note that the statute that Diorec violated suggests a more specific definition that could be used in this type of probation condition. Alaska Statute 11.41.455(a) contains a specific list of sexual conduct,[21] which is incorporated in several other statutes defining sexual offenses.[22] The statute penalizing the distribution of indecent material to minors contains a similar list.[23] The superior court may wish to refer to one of these statutory

**16.** *See United States v. Brigham,* 569 F.3d 220, 234 (5th Cir.2009) (approving condition forbidding offender convicted of a sex crime involving children from possession of adult pornography); *United States v. Boston,* 494 F.3d 660, 667–68 (8th Cir.2007) (same); *United States v. Beeman,* 280 Fed.Appx. 616, 619 (9th Cir.2008) (same holding, based on testimony that adult pornography can be a gateway to child pornography); *Wilfong v. Commonwealth,* 175 S.W.3d 84, 99 (Ky.App.2004) (stating that "it is a legitimate concern that exposure to sexually-arousing or sexually-oriented materials may contribute to sexual deviancy or the possibility of future sexually-abusive behavior").

**17.** *Thomas,* 710 P.2d at 1019.

**18.** *Smith v. State,* 779 N.E.2d 111, 117–18 (Ind. App.2002).

**19.** *See United States v. Guagliardo,* 278 F.3d 868, 872 (9th Cir.2002); *State v. Bahl,* 164 Wash.2d 739, 193 P.3d 678, 687–88 (2008); *see also United States v. Loy,* 237 F.3d 251, 254 (3d Cir.2001) (holding that the term "pornography" is unconstitutionally vague).

**20.** *See Bahl,* 193 P.3d at 688–89; *see also United States v. Simmons,* 343 F.3d 72, 81–82 (2d Cir. 2003) (holding that the defendant had notice of the prohibited conduct, despite the vague nature of this term, when he was convicted under a statute that contained a definition of pornography).

**21.** AS 11.41.455(a) provides:

A person commits the crime of unlawful exploitation of a minor if, in the state and with the intent of producing a live performance, film, audio, video, electronic, or electromagnetic recording, photograph, negative, slide, book, newspaper, magazine, or other material that visually or aurally depicts the conduct listed in (1)-(7) of this subsection, the person knowingly induces or employs a child under 18 years of age to engage in, or photographs, films, records, or televises a child under 18 years of age engaged in, the following actual or simulated conduct:
 (1) sexual penetration;
 (2) the lewd touching of another person's genitals, anus, or breast;
 (3) the lewd touching by another person of the child's genitals, anus, or breast;
 (4) masturbation;
 (5) bestiality;
 (6) the lewd exhibition of the child's genitals; or
 (7) sexual masochism or sadism.

**22.** *See* AS 11.41.436(a)(4); AS 11.41.452(a); AS 11.61.127(a).

**23.** *See* AS 11.61.128(a)(1)(A)-(F).

definitions when it revises Diorec's conditions of probation.

*The restriction on Internet access*

Special Condition No. 16 forbids Diorec from opening an Internet account or accessing the Internet from another person's account without the prior written permission of his probation officer. Diorec argues that this condition is overbroad because he claims the Internet is not related to his present crime, his rehabilitation, or the protection of the public.

Alaska Statute 12.55.100(e)(2)(A) allows a probation condition preventing offenders convicted of certain sexual offenses against children from "using or creating an Internet site." Alaska Statute 12.55.100(e)(2)(C) allows a condition preventing those offenders from "possessing or using a computer."

In *Dunder v. State*, however, we recognized that such a condition may be unnecessarily restrictive:

> Under *Roman v. State*, parole and probation conditions "must be reasonably related to the rehabilitation of the offender and the protection of the public and must not be unduly restrictive of liberty." Dunder points out that it is difficult to function in modern society without access to the technology that Judge Smith's order prohibits him from possessing. He further suggests that, by the time he is released from his lengthy term of imprisonment, it will likely be even more difficult to function in society "without the use of at least one electronic device." Given the rapid advance of technology and the length of Dunder's sentence of imprisonment, we agree that some degree of access to these devices will probably be necessary to Dunder's reintegration into society.[24]

We concluded that a condition prohibiting Internet access could be reasonable only if the condition allows a probation officer to allow necessary Internet use under appropriate conditions. Many courts have approved similar conditions when the Internet ban can be relaxed or modified by a probation officer.[25]

 In this case, Judge Carey found that this condition was reasonable as long as Diorec's probation officer exercises appropriate discretion. The record supports Judge Carey's decision. Seven months before this offense, Diorec created the online profile of a sixteen-year-old boy and contacted J.F. and her friends with that profile. He also had possession of both adult and child pornography on his computer. It was reasonable for the court to conclude that supervision of Diorec's access to the Internet could promote his rehabilitation and protect the public, and that Diorec's probation officer will allow any reasonable Internet use that is important for his rehabilitation.

### Conclusion

Diorec also argues that his sentence is excessive. He concedes that this court does not have jurisdiction to review his sentence, and he requests that this issue should be referred to the Alaska Supreme Court under Alaska Appellate Rule 215(k). We accordingly REFER this issue to the Alaska Supreme Court for discretionary review.

Following review by the Alaska Supreme Court, this case shall be REMANDED to the superior court for modification of Special Condition No. 13 as set forth above. In all other respects, the superior court's judgment is AFFIRMED.

MANNHEIMER, Chief Judge, concurring.

Judge MANNHEIMER, concurring.

I write separately to explain in more detail why I agree with my colleagues that the phrase "sexually explicit material" (which is found in Conditions 13, 14, and 15 of Diorec's

---

**24.** *Dunder v. State*, Mem. Op. & J. No. 5487, 2009 WL 1607917, at *1 (Alaska App. June 10, 2009) (footnotes omitted).

**25.** *See United States v. Crandon*, 173 F.3d 122, 128 (3d Cir.1999); *United States v. Knight*, 86 Fed.Appx. 2, 4 (5th Cir.2003); *United States v. Muhlenbruch*, 682 F.3d 1096, 1104–05 (8th Cir.

2012); *United States v. Antelope*, 395 F.3d 1128, 1142 (9th Cir.2005); *United States v. Walser*, 275 F.3d 981, 987–88 (10th Cir.2001); *United States v. Zinn*, 321 F.3d 1084, 1092–93 (11th Cir.2003); *United States v. Love*, 593 F.3d 1, 11–12 (D.C.Cir. 2010).

special conditions of probation) is constitutionally flawed.

Special Condition 13 prohibits Diorec from possessing "any sexually explicit material"—a phrase which, according to Condition 13,

> includes but is not limited to child erotica, sexually graphic anime [and] adult ... pornography[.]

Condition 13 further states that this prohibition applies to (1) books, magazines, and any other printed matter, as well as (2) movies and videos, and (3) any electronic device that can hold sexually explicit material in visual or aural form—for example, an e-reader.

Special Condition 14 prohibits Diorec from entering "any establishment whose primary business is the sale of sexually explicit material". And Special Condition 15 requires Diorec to "submit to a warrantless, nonconsensual search of his residence or any vehicle under his control, [as well as any] personal computer and/or any item which has Internet connectivity (*i.e.*, X–Box, cell phone, [P]alm [P]ilots, Blackberries, etc.) by a Probation Officer for the presence of sexually explicit material." [26]

Diorec does not challenge the superior court's authority to prohibit him from possessing child erotica, but he does challenge the prohibition on adult pornography and other undefined types of "sexually explicit material".

Diorec notes that Condition 13 declares that the phrase "sexually explicit material" *includes* adult pornography, but is not limited to adult pornography. It is therefore reasonable to infer that the superior court intended the phrase "sexually explicit material" to encompass other, undefined types of printed and video material which, although not pornographic, are nevertheless "sexually explicit".

This provision raises two problems under the First Amendment.

The first problem is vagueness. If "sexually explicit material" includes not only pornography but also other "sexually explicit" things, there is a substantial danger that neither Diorec nor his probation officer will

have a definite idea of what Probation Condition 13 covers.

The State concedes that several courts from around the country have concluded that, in this context, the term "pornography" is unconstitutionally vague. However, somewhat paradoxically, the State asserts that the phrase "sexually explicit material" is *not* unconstitutionally vague.

The State's assertion is paradoxical because, as I have just explained, Condition 13 declares that "pornography" is a smaller subset of the broader category of "sexually explicit material". If the term "pornography" is unconstitutionally vague, then it is difficult to see how the phrase "sexually explicit material" could be free of the same improper vagueness.

The paradox is resolved when one examines the two court decisions that the State relies on: *United States v. Rearden,* 349 F.3d 608 (9th Cir.2003), and *State v. Bahl,* 164 Wash.2d 739, 193 P.3d 678 (2008). In both cases, the courts upheld the phrase "sexually explicit" because that phrase did not stand alone; rather, it was explicitly linked to a more specific and detailed statutory definition.

In *Rearden,* the sentencing court prohibited the defendant from possessing any materials that depicted "sexually explicit conduct *as defined in 18 U.S.C. § 2256(2)* ". 349 F.3d at 620. The federal statute in question, 18 U.S.C. § 2256(2), defines "sexually explicit conduct" as "(i) graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited; (ii) graphic or lascivious simulated; (I) bestiality; (II) masturbation; or (III) sadistic or masochistic abuse; or (iii) graphic or simulated lascivious exhibition of the genitals or pubic area of any person".

In *Bahl,* the Washington Supreme Court engaged in a lengthy discussion whether the terms "pornography" and "sexually explicit" were sufficiently definite to survive a vagueness challenge. 193 P.3d at 686–89. The

**26.** The names "X–Box", "Palm Pilot", and "Blackberry" are all registered trademarks.

Washington court held that a probation condition prohibiting the defendant from possessing "pornography" was unconstitutionally vague. *Id.* at 686–88. The court upheld a probation condition that referred to "sexually explicit material", but not in the context of prohibiting the defendant from possessing printed or video material. Rather, the probation condition in question barred the defendant from "[frequenting] establishments whose primary business pertains to sexually explicit or erotic material." *Id.* at 688–89. Moreover, the Washington court noted that Washington had a statutory definition of "sexually explicit material": RCW 9.68.130(1) defines "sexually explicit material" as:

> any pictorial material displaying direct physical stimulation of unclothed genitals, masturbation, sodomy (*i.e.*, bestiality or oral or anal intercourse), flagellation or torture in the context of a sexual relationship, or emphasizing the depiction of adult human genitals: PROVIDED HOWEVER, That works of art or of anthropological significance shall not be deemed to be within the foregoing definition.

Quoted in *Bahl*, 193 P.3d at 689.

In Diorec's case, the phrase "sexually explicit material" is not linked to any such limiting or clarifying statutory definition. In fact, according to the wording of Special Condition 13, the phrase "sexually explicit material" is *broader* than the term "pornography", because this phrase "includes but is not limited to ... pornography". It therefore appears that the phrase "sexually explicit material", as employed in Diorec's conditions of probation, suffers from improper vagueness.

The second problem is overbreadth. If "sexually explicit material" includes not only pornography but also any other printed or video matter that explicitly describes or depicts sexual conduct, then there is a significant possibility that Condition 13 would cover a large proportion of the books and magazines published in this country, as well as a large proportion of the movies, television shows, and video games produced in this country. If that is the case, then a prohibition of this scope seemingly would not be narrowly tailored to Diorec's rehabilitation and/or the protection of the public.

For these reasons, I agree with my colleagues that Special Conditions 13, 14, and 15—all of which incorporate the phrase "sexually explicit material"—must be rewritten.