NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>Pacific</u> <u>Reporter</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| ANDREW DENNIS JOHNSON,<br><br>　　　　　　　　Appellant,<br><br>　　　v.<br><br>STATE OF ALASKA,<br><br>　　　　　　　　Appellee. | Court of Appeals No. A-12180<br>Trial Court No. 3PA-12-581 CR<br><br>O P I N I O N<br><br>No. 2596 — April 20, 2018 |

Appeal from the Superior Court, Third Judicial District, Palmer, Kari C. Kristiansen, Judge.

Appearances: Hanley Robinson, Attorney at Law, under contract with the Office of Public Advocacy, Anchorage, for the Appellant. Brittany L. Dunlop, Assistant District Attorney, Palmer, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, and Allard and Wollenberg, Judges.

Judge WOLLENBERG.

Andrew Dennis Johnson pleaded guilty to manslaughter. Pursuant to an agreement with the State, Johnson agreed to his term of imprisonment, but his probation conditions were left open to the superior court.

On appeal, Johnson challenges several of the conditions imposed by the court, including conditions that regulate Johnson's contact with his wife and son. For the reasons explained in this opinion, we reverse the condition regulating Johnson's contact with his wife, and we vacate and remand for reconsideration the condition regulating Johnson's contact with his son. We affirm the alcohol- and drug-related conditions.

*Underlying facts*

On March 7, 2012, Andrew Johnson and his wife, Holly Johnson, got into an argument. Holly left their home and went to the home of her friend, Jessica Smith.

Later that night, Johnson asked Holly's brother, David Carlton, to give him a ride to Smith's home. According to Johnson, he wanted to retrieve the truck Holly had driven to Smith's residence. He was also concerned that Holly might use drugs with Smith, and he wanted Holly to return home.

Carlton drove Johnson and Johnson's son, Spencer Johnson, to Smith's home. At the time, Spencer was nineteen years old and had moved to Alaska two months earlier to live with Johnson and Holly. Johnson said he took Spencer with him because he (Johnson) did not have a driver's license and he needed someone to drive his truck from Smith's residence.

Upon arriving at Smith's home, Johnson told Carlton to stay in the car, and he told Spencer to start the truck belonging to Johnson and Holly. Johnson went alone to the front door of the house. Smith's fiancé, Michael Plummer, came to the door, and Johnson and Plummer began shoving each other. Johnson told Plummer to tell him where Holly was, and Plummer questioned Johnson about who he was and what he was doing there.

Seeing the altercation, Spencer ran to the house to intervene, and he stabbed Plummer in the throat with a knife. Smith retrieved a gun and shot at Johnson, Spencer, and Carlton (who had also entered the home), hitting Johnson. The three men fled.

Plummer died at the scene.

*Proceedings*

The State secured an indictment against Johnson for alternative counts of second-degree murder, manslaughter, and criminally negligent homicide, and two counts of first-degree burglary.[1] The State also charged Spencer Johnson with first-degree murder and related charges. Carlton was not charged.

Pursuant to a plea bargain with the State, Johnson pleaded guilty to manslaughter. The plea bargain called for Johnson to receive a sentence of 15 years with 5 years suspended (10 years to serve) and 5 years of probation. The State dismissed the remaining charges against Johnson. The agreement left Johnson's probation conditions open to the sentencing court.

Prior to sentencing, the author of the presentence report proposed a series of probation conditions. These conditions included (1) a condition that precluded Johnson from knowingly associating with another felon absent permission by a probation officer, and (2) a condition that absolutely barred Johnson from having contact with his son and co-defendant, Spencer Johnson, who was still awaiting trial at that time.

Johnson's attorney objected to several of these conditions. First, Johnson's attorney challenged the condition that restricted Johnson from knowingly associating with another felon, noting that the condition would restrict Johnson from having contact

---

[1] AS 11.41.110(a)(3); AS 11.41.120(a)(1); AS 11.41.130; and AS 11.46.300(a)(1), respectively.

with his wife, Holly (who had a felony conviction), and potentially his son, Spencer (who might soon become a felon). He also challenged the condition absolutely barring Johnson from having contact with Spencer. Second, Johnson's attorney challenged the conditions prohibiting Johnson's use and possession of alcohol and illegal controlled substances, as well as related conditions precluding Johnson from residing in a residence where alcohol is present or entering an establishment where alcohol is the main item for sale, and requiring Johnson to submit to random testing, warrantless searches for drugs and alcohol, and a substance abuse assessment.

At sentencing, the prosecutor agreed that Holly had a felony conviction and that the proposed condition generally precluding Johnson from having contact with felons applied to contact between them. But rather than propose an exception that would simply permit Johnson to have contact with Holly, the State proposed that the couple could have contact so long as they were both "in compliance with their respective probation officers." Superior Court Judge Kari C. Kristiansen adopted a version of the State's proposal, permitting contact between Johnson and Holly so long as "both parties are compliant with parole/probation."

The prosecutor opposed any contact between Johnson and Spencer. The prosecutor argued that this condition was necessary because Johnson and Spencer "conspired together" on the way to Smith's house to get Holly back at any cost. Johnson's attorney disputed the notion that anyone in the car was getting "tuned up" on the way to the Smith residence. And he argued that, in any event, a no-contact order was neither necessary nor the least restrictive condition, given the father-son relationship between Johnson and Spencer.

The court ultimately deleted the condition absolutely barring Johnson from having contact with Spencer, explaining that once sentencing was completed in both cases and the defendants were out of custody, "I don't see why Mr. Johnson can't have

contact with his son." But, as it had with Holly, the court made this contact contingent — only if "both parties are in compliance with probation/parole."

(The court also imposed a condition allowing Johnson to have contact with Spencer while Spencer's case was in presentencing status, "so long as neither talks about the case while they are incarcerated." Johnson does not directly challenge this condition on appeal, and we note that Spencer has since been convicted and sentenced.[2])

Johnson now appeals the challenged probation conditions.

*The State's jurisdictional argument*

The State argues that this Court lacks jurisdiction to consider Johnson's appeal. If raised by a party or identified by the court, a potential flaw in subject-matter jurisdiction is a threshold issue that we must decide before addressing other issues presented in an appeal.[3]

Alaska Statute 12.55.120(a) limits a criminal defendant's right of sentence appeal. Under AS 12.55.120(a), a defendant who has received a felony sentence exceeding two years to serve or a misdemeanor sentence exceeding 120 days may appeal the sentence to this Court on the ground that it is excessive "unless the sentence was imposed in accordance with a plea agreement . . . and that agreement provided for imposition of a specific sentence[.]" This Court's jurisdictional statute, AS 22.07.020, specifically incorporates the limitations set out in AS 12.55.120.[4]

---

[2]   Spencer was convicted of second-degree murder and first-degree burglary. *See State v. Johnson*, Judgment and Order of Commitment/Probation, 3PA-12-547 CR.

[3]   *See Totemoff v. State*, 905 P.2d 954, 957 (Alaska 1995).

[4]   *See* AS 22.07.020(b).

The State argues that this Court lacks jurisdiction to hear Johnson's appeal because he agreed to his term of imprisonment as part of a plea agreement. The answer to the State's argument is found in our decision in *Allen v. Anchorage*.[5]

In *Allen*, we held that we had jurisdiction to hear "non-term-of-imprisonment sentence appeals" even when the term of imprisonment imposed by the trial court does not exceed the threshold amount to serve set out in AS 12.55.120(a).[6] Like Johnson, Allen challenged the trial court's imposition of a probation condition.[7] We declared that we had jurisdiction to consider Allen's claim even though she had received a term of imprisonment of only 30 days to serve, well below the threshold amount in AS 12.55.120(a) for a misdemeanor offense.[8] We interpreted the threshold amounts in AS 12.55.120(a) (and by extension, our jurisdictional statute AS 22.07.020(b)) as solely limiting our ability to hear appeals challenging the excessiveness of a defendant's *term of imprisonment* — but placing no restrictions on our jurisdiction to hear appeals challenging other terms of a defendant's sentence.[9] We recently reaffirmed *Allen*'s core holding in *Maguire v. State*.[10]

Here, Johnson agreed to his term of imprisonment, and thus, he has no right to appeal that term of imprisonment.[11] But Johnson is not appealing his term of imprisonment; he is appealing his probation conditions, which he actively contested in

---

[5]   *Allen v. Anchorage*, 168 P.3d 890 (Alaska App. 2007).

[6]   *Id.* at 894.

[7]   *Id.* at 891.

[8]   *Id.* at 891-92.

[9]   *Id.* at 895.

[10]   *Maguire v. State*, 390 P.3d 1175, 1177-78 (Alaska App. 2017).

[11]   AS 12.55.120(a).

the superior court. Consistent with our holdings in *Allen* and *Maguire*, we conclude that we have jurisdiction to decide Johnson's non-term-of-imprisonment appeal.[12]

*Johnson's challenges to the limitations on his association with Holly Johnson and Spencer Johnson*

Johnson argues that the conditions regulating his contact with his wife, Holly, and his son, Spencer, unduly restrict his right to familial association and therefore violate his constitutional rights to due process, privacy, and freedom of association. In particular, Johnson challenges Special Condition No. 9, which provides that Johnson "may have contact with Holly Johnson [only] as long as both parties are compliant with parole/probation." Johnson also challenges Special Condition No. 11, which provides that Johnson "may have contact with Spencer Johnson post[-]sentence [only] if both parties are in compliance with probation/parole."

In general, a sentencing court has broad authority to fashion conditions of probation so long as they are "reasonably related to the rehabilitation of the offender and the protection of the public and [are] not unduly restrictive of liberty."[13] But when a probation condition restricts an individual's constitutional rights, that condition is subject to special scrutiny.[14] Here, both Special Condition No. 9 and Special Condition No. 11

---

[12] *See, e.g.*, *Keeling v. State*, 2017 WL 1291140 (Alaska App. Apr. 5, 2017) (unpublished) (on rehearing); *see also* Alaska R. App. P. 215(a)(2) (providing that a defendant may appeal a sentence of any length on grounds other than excessiveness).

[13] *Thomas v. State*, 710 P.2d 1017, 1019 (Alaska App. 1985) (quoting *Roman v. State*, 570 P.2d 1235, 1240 (Alaska 1977) (internal quotation marks omitted).

[14] *Roman*, 570 P.2d at 1241 (quoting *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 265 (9th Cir. 1975)); *see also Diorec v. State*, 295 P.3d 409, 417 (Alaska App. 2013).

restrict Johnson's familial associations with his wife and son, and thus plainly implicate his constitutional rights.[15]

Thus, before the superior court could impose these conditions, or otherwise restrict Johnson's contact with Holly or Spencer, the court needed to subject these conditions to special scrutiny. To survive special scrutiny, a probation condition must be both "reasonably related to the rehabilitation of the offender and protection of the public" and "narrowly tailored to avoid unnecessary interference" with a defendant's constitutional rights.[16] The court must "affirmatively consider and have good reason for rejecting lesser restrictions."[17]

*Why we reverse any limitation on Johnson's contact with Holly Johnson*

The record shows that the superior court did not apply the necessary heightened level of scrutiny to the probation condition restricting Johnson's contact with Holly. Rather than start with the premise that Johnson had a constitutional right to unrestricted contact with his wife absent a compelling reason to limit that contact, the court started with the premise that Holly's status as a felon permitted the court to restrict Johnson's contact with her, as long as that restriction did not absolutely prohibit their contact. The court stated, "That's his wife, and I don't see any reason why we should

---

[15] *See Simants v. State*, 329 P.3d 1033, 1038-39 (Alaska App. 2014); *Hinson v. State*, 199 P.3d 1166, 1174 (Alaska App. 2008); *see also Dawson v. State*, 894 P.2d 672, 680 (Alaska App. 1995) (recognizing that "[a] condition of probation restricting marital association plainly implicates the constitutional rights of privacy, liberty and freedom of association and . . . must be subjected to special scrutiny").

[16] *Simants*, 329 P.3d at 1039 (internal quotations omitted).

[17] *Peratrovich v. State*, 903 P.2d 1071, 1079 (Alaska App. 1995); *Dawson*, 894 P.2d at 680-81.

*further restrict* their association so long as they're compliant on probation and parole while they're being monitored." (Emphasis added.)

But when a defendant's spouse is a felon, the court must consider whether *any* restriction on contact with that person, however slight, is necessary.[18] If the court imposes a restriction, it must "affirmatively consider and have good reason for rejecting lesser restrictions."[19]

Although we would generally remand this issue to the superior court for application of special scrutiny, we conclude that there is nothing in the record to support a restriction on Johnson's contact with Holly.[20] The restriction appears to have been based solely on the fact that Holly had a prior, unrelated (and unspecified) felony conviction. Johnson was not charged with engaging in criminal conduct together with, or against, Holly, and the prosecutor did not argue that there were any past instances of assaultive or other criminal conduct between them. The prosecutor also did not argue that Holly's past conviction would actively undermine Johnson's rehabilitation, and the court's comments underscore that the court itself did not believe that Johnson's contact with Holly would actively undermine Johnson's rehabilitation or the safety of the public.

---

[18] *See Dawson*, 894 P.2d at 680-81 (recognizing that "precluding association between marital partners" is "an extreme restriction of liberty" and vacating a condition that precluded contact between the defendant and his co-defendant wife absent probation officer approval where the trial court had not narrowly tailored the restriction or explained why Dawson's other probation conditions were insufficient to address the court's concerns).

[19] *Peratrovich*, 903 P.2d at 1079; *Dawson*, 894 P.2d at 680-81.

[20] *See Dawson*, 894 P.2d at 680-81.

We acknowledge that restrictions on familial association may be justified by "actual necessity and the lack of less restrictive alternatives."[21] But the State did not establish, the court did not identify, and the record fails to otherwise disclose, why any restriction on Johnson's contact with Holly was necessary in this case.

Accordingly, we reverse Special Condition No. 9.

*Why we direct the superior court to reconsider Special Condition No. 11, which restricts Johnson's contact with Spencer Johnson*

We reach a slightly different conclusion with regard to the restriction on Johnson's contact with his son, Spencer. Here, given the status of Johnson and Spencer as co-defendants, there may be some reason to impose a limited restriction on their contact. But as with the condition regulating Johnson's contact with Holly, the superior court failed to subject this condition to the necessary special scrutiny. We also have concerns about the way the imposed restriction will operate in practice. Accordingly, we vacate and remand this condition for reconsideration.

Like conditions that restrict marital association, conditions of probation that restrict the parent-child relationship implicate constitutional rights and are subject to special scrutiny to ensure that they are "narrowly tailored to avoid unnecessary interference with family relationships."[22] Although Johnson and Spencer were co-defendants, their status as co-defendants (or felons) alone did not override the importance of their familial relationship.[23]

---

[21] *Id.*

[22] *Simants*, 329 P.3d at 1038-39; *see also Hinson*, 199 P.3d at 1174.

[23] *Dawson*, 894 P.2d at 680-81.

The superior court recognized this by rejecting a complete bar on Johnson's contact with Spencer. But the court did not further explain why the restriction in Special Condition No. 11 was necessary, what this limitation on Johnson's contact with Spencer was designed to accomplish, and whether the limitation was the least restrictive option available.

We note that although Johnson and Spencer were co-defendants, the State presented no information about whether Spencer — who was nineteen years old when he committed this offense — had a prior criminal history, nor was there any indication that Johnson and Spencer had engaged in criminal conduct together in the past or that they were likely to do so in the future. While the prosecutor argued at sentencing that Johnson and Spencer were getting "angry" and "ramped up" on the car ride over to the Smith residence, Johnson's attorney disputed the factual basis of the prosecutor's conclusion. The superior court did not expressly resolve or make factual findings on this issue.

Citing the limited nature of the restriction, the State analogizes this case to *Diorec v. State*.[24] But *Diorec* is distinguishable. In *Diorec*, we upheld a probation condition that made contact between Diorec and his biological daughter contingent on a family court judge's order in Diorec's divorce proceedings.[25] Because Diorec had been convicted of a crime against his stepdaughter, we found it reasonable for the sentencing court to act to protect other members of Diorec's family.[26] And because the divorce court had already ordered that any contact between Diorec and his biological daughter

---

[24] *Diorec v. State*, 295 P.3d 409 (Alaska App. 2013).

[25] *Id.* at 414.

[26] *Id.*

had to be approved by her counselor, the sentencing court's restriction was narrowly tailored and avoided potentially conflicting court orders.[27]

In contrast, Johnson was not convicted of a crime against a family member. And there was no separate proceeding where a potentially inconsistent order had been, or would be, issued.

Indeed, by rejecting any restrictions on Johnson's contact with Spencer while both were in compliance with probation and parole, the court appears to have concluded that such contact was not likely to cause the problems envisioned by the prosecutor or to present any other danger to the public or undermine Johnson's rehabilitation. These findings suggest that the court may conclude, after application of special scrutiny, that no restriction on Johnson's contact with Spencer is necessary to ensure Johnson's rehabilitation and the safety of the public.

If, however, the court concludes that some limitation on Johnson's contact with Spencer is required, the court must ensure that the limitation is the least restrictive necessary and that the condition does not suffer from certain problems of vagueness and overbreadth that are present in the current limitation.

Special Condition No. 11 allows Johnson to have contact with Spencer as long as both parties are "in compliance with probation/parole." The court did not define "compliance." It is therefore unclear whether the bar on contact is triggered by *any* violation of probation or parole, or only those violations for which the probation officer initiates a formal revocation proceeding. As a result, the limitation does not adequately inform Johnson when he is required to cut off contact, and his contact with Spencer could seemingly be cut off for trivial infractions.

---

[27] *Id.*

And by making contact dependent on the compliance of "both parties," the court has seemingly subjected Johnson to possible revocation and imprisonment if he initiates contact when *Spencer* is out of compliance with probation or parole, even absent proof that Johnson knew of Spencer's violation. In addition to raising significant due process issues, sanctioning Johnson in such circumstances lacks any apparent connection to his rehabilitation. And even if Johnson were aware of Spencer's violation status, limiting Johnson's ability to contact his immediate family members when he himself otherwise remains compliant with his own supervision would preclude him from discussing important matters with Spencer, including bail.

Accordingly, we vacate Special Condition No. 11 and remand for reconsideration. If, on remand, the State wishes to renew its request for a restriction on Johnson's contact with Spencer when both men are out of custody, the superior court may consider whether a better defined, more fully explained restriction is necessary.

Johnson makes one additional point with respect to the conditions regulating his contact with Spencer. Johnson notes that his conditions fail to address the likely situation in which Johnson is released from custody but Spencer remains incarcerated. We agree that when Special Conditions Nos. 10 and 11 are read together, they fail to expressly account for that scenario and therefore fail to give Johnson notice about whether he may contact Spencer in prison during that period.

We note, however, that the court's comments suggest that it did not intend to limit contact while at least one person was incarcerated (and thus, subject to monitoring). We agree that a restriction on contact under those circumstances is not warranted.

*Why we uphold the alcohol- and drug-related conditions*

Johnson's final challenge is to the alcohol- and drug-related probation conditions. Specifically, Johnson challenges General Condition No. 9 and Special Conditions Nos. 1-8, which: (1) prohibit Johnson from possessing and consuming alcohol and illegal controlled substances; (2) require Johnson to submit to testing at the direction of a probation officer to determine his use of drugs or alcohol; (3) preclude Johnson from living in a residence where alcohol is present or entering an establishment where alcohol is the main item for sale; (4) require Johnson to obtain a substance abuse evaluation and complete any recommended treatment (including up to six months of residential treatment, if recommended); and (5) subject Johnson to warrantless searches of his person, personal property, residence, or any vehicle in which he is found for the presence of alcoholic beverages or drug paraphernalia. Johnson argues that these conditions are not reasonably related to his rehabilitation or the protection of the public.

In imposing these conditions, the superior court relied primarily on Johnson's criminal history. The court specifically found that Johnson's use of alcohol or controlled substances would undermine his rehabilitation, and the court concluded, based on this history, that testing and monitoring for these substances were reasonably related to Johnson's rehabilitation.

At the time of sentencing, Johnson was forty-one years old. The record shows that he has a lengthy criminal history of assaultive, property-related, and driving offenses dating back to the time he was a juvenile. His criminal history includes two convictions for driving under the influence and a drug-related conviction. One of Johnson's convictions for driving under the influence arose from events in August 2003 in which, while intoxicated, Johnson drove over a center divider, struck another vehicle in oncoming traffic, and then assaulted other drivers after exiting his truck. For this conduct, Johnson was convicted of second-degree robbery, second- and fourth-degree

assault, and driving under the influence. Shortly after his release from custody in 2007, Johnson was arrested for felony driving under the influence, felony eluding, and resisting arrest, and although he was not separately convicted for these crimes, he served his remaining parole and probation time. And in 2010 and 2012, he violated his parole by consuming alcohol and using cocaine, respectively.

At the sentencing hearing, Johnson self-reported that he had recently engaged in alcohol treatment. Johnson acknowledged that he had a "drinking problem" in the past, but he asserted that he had "curbed" this problem "after [his] last DUI." In its comments, the superior court suggested that Johnson's recent alcohol treatment demonstrated there were still "alcohol issues at play."

Given Johnson's substance-related criminal history and his recent alcohol treatment, the superior court could validly conclude that conditions restricting Johnson's use of alcohol and illegal drugs, and requiring evaluation, testing, and monitoring for alcohol and substance abuse, were reasonably related to Johnson's rehabilitation.[28] We therefore conclude that the superior court did not abuse its discretion in imposing General Condition No. 9 and Special Conditions Nos. 1-8.

*Conclusion*

We REVERSE Special Condition No. 9, which regulates Johnson's contact with Holly Johnson. We VACATE Special Condition No. 11, which regulates Johnson's contact with Spencer Johnson, and remand for reconsideration. Further, we direct the superior court to expressly limit General Condition No. 7 (precluding contact with

---

[28] *See Phillips v. State*, 211 P.3d 1148, 1153 (Alaska App. 2009) (noting that a sentencing judge may impose a probation condition authorizing warrantless searches for drugs and alcohol "when substance abuse in the defendant's background suggests that searches for drugs and alcohol may further the defendant's rehabilitation").

felons) so that it does not restrict Johnson from having contact with Holly Johnson, and so that it does not restrict contact with Spencer Johnson beyond whatever limitations the court may impose in a revised Special Condition No. 11.

With these exceptions, we AFFIRM the judgment of the superior court.